UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ERIC COOLEY                                                               PLAINTIFF

V.                          CIVIL ACTION NO. 3:22-CV-60-KHJ-MTP

STATE FARM FIRE AND
CASUALTY COMPANY                                    DEFENDANT

ORDER

Before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") [36] Motion to Strike Expert Testimony and [38] Motion for Summary Judgment or, in the alternative, Partial Summary Judgment. For the following reasons, the Court denies the Motion to Strike and grants in part and denies in part the Motion for Summary Judgment.

I.     Background

This case arises from an insurance dispute between Plaintiff Eric Cooley and Defendant State Farm. On April 13, 2019, a windstorm blew down a tree in Cooley's yard in Vicksburg, Mississippi. Compl. [1-1] ¶ 6; Mem. Supp. Def.'s Mot. Strike Expert [37] at 2. The tree struck Cooley's roof, but the parties dispute how much damage the tree caused. *Compare* [1-1] ¶ 6 (alleging the tree caused "significant damage"), *with* [37] at 2 (stating the tree "brushed the edge of the roof"). On April 15, State Farm's adjuster inspected Cooley's property. [1-1] ¶ 8; [37] at 2. He documented $1,091.58 in damages, which was less than Cooley's deductible. [1-1] ¶

8; [37] at 2. Accordingly, State Farm did not issue a payment for the damages at that time. [1-1] ¶ 8; [37] at 2.

In July 2020, public adjuster Mario Barrilleaux inspected Cooley's property. [1-1] ¶ 10; [37] at 3. He concluded that Cooley's house and other personal property sustained around $40,000 in damages from the windstorm. [1-1] ¶ 10; [37] at 3. After Cooley submitted another claim to State Farm based on Barrilleaux's estimate, State Farm hired Jason Dill, an independent engineer, to reinspect the property. [1-1] ¶ 13; [37] at 3–4. Dill determined that Cooley's property sustained damages of $2,569.63. [1-1] ¶ 13. Based on that estimate, State Farm paid Cooley $1,353.63—the amount of damages above Cooley's deductible. *Id.*; [37] at 4.

On February 8, 2022, Cooley sued State Farm, alleging breach of contract and bad faith for failing to pay for all the damages assessed by Barrilleaux. [1-1] ¶¶ 23–36. Unfortunately, Barrilleaux died after Cooley filed his lawsuit. [37] at 4; Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [43] at 2. Cooley then retained public adjuster Luke Irwin to review his claim and offer expert testimony on the scope, value, and cause of the damages to his property from the windstorm. [37] at 4; [43] at 2. Irwin reviewed photos of Cooley's property, the estimates from State Farm and Barrilleaux, a roof scope report, applicable building codes, and other documents, and estimated that Cooley's property sustained around $95,000 in damages. [36-1] at 51; [37] at 5.

State Farm now moves to strike Irwin's expert testimony. [36]. State Farm further contends that if the Court excludes Irwin's testimony, then summary

2

judgment is appropriate because Cooley cannot prove his home sustained additional damages. Mem. Supp. Mot. Summ. J. [39] at 7. Alternatively, even if Irwin's testimony is not excluded, State Farm argues that partial summary judgment is appropriate for Cooley's bad-faith claim, punitive damages, or other extra-contractual damages. *Id.* at 8–12.

The Court first addresses the [36] Motion to Strike and then the [38] Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.

II. Motion to Strike

A. Standard

An expert who is qualified by "knowledge, skill, experience, training, or education" may provide opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district judge acts as a gatekeeper to ensure that any evidence admitted under FRE 702 is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). That role is "a flexible one," and there is no "definitive checklist or test" that a judge must follow in every case. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Rather, "the gatekeeping

3

inquiry must be 'tied to the facts of a particular case.'" *Id.* (quoting *Daubert*, 509 U.S. at 593 (citation omitted)).

"While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendment). "The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

  B. Analysis

State Farm attacks Irwin's expert testimony on several grounds. But it fails to align its arguments with the contours of Rule 702, and instead lumps its arguments in one discussion section. *See* [37] at 5–13. Even so, the Court will address each element of Rule 702 pursuant to its "gatekeeping" role.

  i. Irwin's Qualifications

Federal Rule of Evidence 702 requires that an expert be properly qualified. But it "does not mandate that an expert be highly qualified in order to testify about a given issue." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). Rather,

"[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

Courts regularly find that insurance and public adjusters are qualified to testify on damage-causation issues in insurance cases. *See, e.g., Haimur v. Allstate Prop. & Cas. Ins. Co.*, 605 F. Supp. 3d 887, 890 (S.D. Miss. 2022); *Patton v. Metro. Lloyds Ins. Co. of Tex.*, No. 5:21-CV-074, 2022 WL 2898946, at *3–4 (N.D. Tex. Feb. 14, 2022); *Anderson v. Allstate Ins. Co.*, No. 17-597, 2021 WL 292440, at *9–10 (M.D. La. Jan. 28, 2021); *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-CV-175, 2015 WL 4915701, at *6–7 (S.D. Miss. Aug. 18, 2015). "It is a well-known fact that claims adjusters must estimate the damage caused by natural disasters and other casualties, because causation is a key factor in insurance-coverage determinations." *Patton*, 2022 WL 2898946, at *4. Although "[e]xperience in engineering . . . could be helpful . . . in evaluating weather-damage causation," it is not required and "goes to the *degree* of expertise" rather than whether an adjuster is qualified under Rule 702. *Id.*

Irwin is qualified to testify in this case. He holds public-adjuster licenses in both Mississippi and Louisiana and is a licensed insurance adjuster in Oklahoma. Irwin's Expert Report [36-1] at 12. He has conducted over 1,000 underwriting inspections, been an appraiser or umpire for over 1,000 matters, and served as a public adjuster for over 1,000 claims. *Id.* He also has extensive certifications and training in inspecting damages to roofs and other property. *Id.* at 12–13. Irwin has the requisite "knowledge, skill, experience, training, [and] education" to testify on

5

the causation of damages to Cooley's roof and to make repair estimates. *See* Fed. R. Evid. 702. In fact, State Farm concedes that Irwin's experience adjusting claims "may permit him, with the proper factual basis and other necessary factors, to prepare repair estimates . . . ." [37] at 6.

But State Farm argues Irwin is not qualified to testify to certain "engineering opinions" in his expert report. *Id.* at 5. Specifically, State Farm objects to Irwin's "approximately [four] page discussion of the general effects of wind on structures, the forces involved, and quotations from various engineers of engineering journals." *Id.* at 5–6. The Court agrees that certain portions of the four-page discussion are problematic. *See* [36-1] at 4–8. For example, one section discusses in detail how changes in atmospheric conditions can lead to wind damages, and it is doubtful that Irwin is qualified to testify to that specific information. *See id.* at 4. But as Cooley points out, "the contested portion of Mr. Irwin's report does not include any engineering conclusions or opinions for Plaintiff's structure specifically." [41] at 7. State Farm also concedes this point. *See* [37] at 6 ("Mr. Irwin admits that this entire discussion is a cut and paste that appears in most of his reports and does not have any specific application to this case.").

Even if Irwin is not qualified to testify to certain portions of his report, it does not bar him from testifying completely. Although experience in engineering could help Irwin's testimony, it is not required for him to testify about the causes of damage to Cooley's property. *See Patton*, 2022 WL 2898946, at *4. Such experience "goes to the degree of [Irwin's] expertise," not his general qualifications. *See id.*

6

Even if there is some merit to State Farm's contention that Irwin is not qualified to testify as an engineer, "the precise delineations of what opinions [he] can offer are more appropriately the subject of a motion in limine and/or an objection at trial." *Timoschuk v. Daimler Trucks N. Am.*, No. SA-12-CV-816-XR, 2014 WL 2533789, at *6 (W.D. Tex. June 4, 2014). Irwin is therefore qualified to provide expert testimony in this case.

### ii.  Helpfulness

Rule 702 next requires that "the expert's . . . knowledge . . . help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591.

Irwin's proposed testimony is relevant and therefore helpful. Underlying damages caused by storms to roofs, homes, and other property are not always readily apparent to a layperson. Irwin's testimony will help the trier of fact understand the alleged damage to Cooley's property and the requirements for fixing it.

### iii.  Foundation

An expert's testimony must be based "on sufficient facts and data" to be admissible. Fed. R. Evid. 702(b). "[T]he basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513,

515 (5th Cir. 2013). "In some cases, however, the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Expert witnesses are "permitted wide latitude to offer opinions including those that are not based on first-hand knowledge or observation." *Daubert*, 509 U.S. at 592. So an expert witness's failure to personally inspect the subject property does not disqualify that expert's testimony for insufficient foundation. *See Nucor Corp. v. Requenez*, 578 F. Supp. 3d 873, 892–93 (S.D. Tex. 2022); *Smiley v. New Hampshire Ins. Co.*, No. 17-CV-1094, 2021 WL 292449, at *11 (M.D. La. Jan. 28, 2021); *Salina v. State Farm Fire and Cas. Co.*, No. B-10-194, 2012 WL 5187996, at *6 (S.D. Tex. Feb. 23, 2012). Rather, an expert witness may base their testimony on pictures of the property, the opinions of other experts, and other documents from third parties. *See Haimur*, 605 F. Supp. 3d at 891; *Nucor*, 578 F. Supp. 3d at 892–93; *Smiley*, 2021 WL 292449, at *11.

Irwin's testimony is based on sufficient facts and data. In preparing his expert report, Irwin reviewed State Farm's report and estimates, Jason Dill's report, Mario Barrilleaux's report, photographs from Cooley's property, a roof scope report, and several other documents. *See* [36-1] at 2. Although Irwin did not personally visit Cooley's property, this is not a case in which the expert witness's sources are "of such little weight that the jury should not be permitted to receive [his] opinion." *See Viterbo*, 826 F.2d at 422. Rather, the jury should be allowed to

hear Irwin's testimony and decide for themselves "whether the predicate facts on which [Irwin] relied are accurate." *See Moore*, 547 F. App'x at 515.

State Farm argues Irwin's testimony is not based on sufficient facts because it is "based largely on his experience adjusting claims in the State of Louisiana, and not in the State of Mississippi" and Irwin improperly "refer[red] to Louisiana requirements and custom" in creating his report. [37] at 7. But this objection is misplaced for two reasons. First, although Irwin did refer to certain Louisiana codes in his report, he also reviewed the relevant Mississippi codes and requirements. *See* [36-1] at 2–3. Second, Irwin's reference to Louisiana requirements and custom is an issue of credibility, not admissibility. *See Jacked Up, L.L.C.*, 807 F. App'x at 348. A jury can determine what weight to give Irwin's testimony based on his experience—or lack thereof—of adjusting claims in Mississippi.

State Farm also contends Irwin improperly based his opinions on Mario Barrilleaux's expert report. [37] at 6 n.4. It argues that because Barrilleaux had a contingency fee agreement with Cooley, Barrilleaux would be barred from testifying pursuant to Miss. Code Ann. § 83-17-523(2)(i). *Id.* And because Barrilleaux would be barred from testifying, State Farm asserts Irwin should not be permitted to base his opinions on Barrilleaux's report. *Id.*

Miss. Code Ann. § 83-17-523(2)(i) does not apply, however. It states that "[a] public adjuster shall not testify as an expert witness in any judicial or administrative proceeding while maintaining a pecuniary interest in the outcome of the proceeding." Miss. Code Ann. § 83-17-523(2)(i). State Farm does not argue that

9

Irwin has a pecuniary interest in the outcome, and the statute does not prohibit an expert witness from relying on the report of another expert who had a pecuniary interest in the outcome of the case. Additionally, State Farm's premise that Barrilleaux would have been barred from testifying is flawed. Miss. Code Ann. § 83-17-523(2)(i) contains a broad exception that allows public adjusters to testify at trial so long as their contingency agreement is converted to an hourly rate. Thus, it is likely that Barrilleaux's agreement would have been converted to an hourly rate and he would have been allowed to testify if he had survived. There is therefore no reason the Court should not allow Irwin to rely on Barrilleaux's report.

           iv.    Reliability

Finally, an expert's testimony must be reliable. Fed. R. Evid. 702(c)-(d). Testimony is reliable if it is "the product of reliable principles and methods," and the expert must "reliably appl[y]" those principles and methods to the facts of the case. *Id.* In *Daubert*, the Supreme Court provided several factors for a court to consider in assessing reliability. *See* 509 U.S. at 593–95. But those factors "do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 594). In fact, "the factors identified in *Daubert* may or may not be pertinent in assessing reliability," depending on the case. *Id.* (quotation omitted). The key inquiry for a court is "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. Ultimately, "the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

Most of State Farm's challenges relate to the reliability of Irwin's testimony. *See* [37] at 7–13. State Farm questions the reliability of the type of work Irwin included in his report, *see id.* at 7–9, and the cost of that work, *see id.* at 10–11. Disagreements about the type of work included in Irwin's report goes to the weight of his testimony, not its admissibility. Although Irwin included more repairs in his report than the other experts in this case, Irwin based his findings on sufficient facts and data. *See supra* Part II.B.iii. And "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1076.

As to the cost of the work, State Farm challenges Irwin's calculations using the Xactimate computer program. [37] at 10. State Farm does not allege that the Xactimate program itself is unreliable, but that Irwin's application of the program and his deviation from the program's prices are unreliable. *See id.* at 10–11. Many courts have found that the use of Xactimate satisfies the *Daubert* standard. *See Mahli*, 2015 WL 4915701, at *7 (citing cases). "Miscalculations and inaccuracies [in using such a program] . . . go to the weight of the evidence and not its admissibility." *Id.* (citing *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 816 F. Supp. 2d 442, 462 (W.D. Ky. 2011)). "[C]ourts have [specifically] found alleged errors, inaccuracies, or deficiencies associated with the calculation of

11

damages under Xactimate to be insufficient to warrant the exclusion of expert testimony." *Id.* (citing cases). Accordingly, State Farm's argument that Irwin's "subjective and creative pricing" should be excluded lacks merit. *See* [37] at 11. Although State Farm's "critique of [Irwin's] method of calculating damages may prove persuasive to the jury, . . . it does not justify exclusion under Rule 702." *Mahli*, 2015 WL 4915701, at *8.

Because Irwin's testimony satisfies the requirements of Rule 702, the Court denies State Farm's [36] Motion to Strike. Any issues with Irwin's testimony can be solved at trial with "[v]igorous cross-examination [and] presentation of contrary evidence." *See 14.38 Acres of Land*, 80 F.3d at 1078. This ruling does not limit State Farm's ability to raise specific objections to Irwin's testimony at trial.

III. Motion for Summary Judgment or Partial Summary Judgment

State Farm's Motion for Summary Judgment depends on the Court's exclusion of Irwin's expert testimony. *See* [39] at 7. Because the Court denied State Farm's [36] Motion to Strike, its Motion for Summary Judgment necessarily fails. Accordingly, the Court denies State Farm's Motion for Summary Judgment.

Alternatively, State Farm argues that even if Irwin is allowed to testify at trial, partial summary judgment is appropriate for Cooley's claims of bad faith, punitive damages, or other extra-contractual damages. [39] at 8.

A. Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "If the moving party will not bear the burden of proof at trial, . . . [it] need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991). "After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.*

    B. Analysis

"Under Mississippi law, punitive damages may be assessed against an insurer only when the insurer denies a claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 872–73 (5th Cir. 1991). Whether an insurance company had an arguable reason to deny coverage is a question of law and is determined by the "directed verdict test." *Id.* at 273. That test holds that "unless the insured would be entitled to a directed verdict on the underlying insurance claim, an arguable reason to deny an insurance claim exists in most instances." *Id.* (citing *Blue Cross & Blue Shield v. Campbell*, 466

So.2d 833, 843 (Miss. 1984)). Consequently, an insurance company "does not need to prove that it was a certainty that [the plaintiff] was not entitled to payment." *Id.* Rather, "it must show only that it had reasonable justifications, in either fact or law, to deny payment." *Id.*

Cooley is not entitled to punitive damages or other extra-contractual damages because State Farm had reasonable justifications for denying his payments. Two days after the windstorm, State Farm inspected Cooley's property and reported a little more than $1,000 in damages. *See* [38-10] at 3. Over a year later, Cooley contacted Barrilleaux, who estimated that Cooley's house sustained around $40,000 in damages from the windstorm. *See* [37] at 3. State Farm then hired Jason Dill, an independent engineer, to inspect the property, and he reported $2,569.63 in damages. [1-1] ¶ 13. After Barrilleaux died, Cooley hired Irwin, who estimated around $95,000 in damages. [36-1] at 51; [37] at 5. Finally, roofing expert Andy Woodard inspected Cooley's house and found that Cooley's roof did not need to be replaced, but if it did, it would only cost $15,350.32. [38-6] at 8–11.

Those varying expert opinions show that a reasonable justification in fact exists for State Farm to deny Cooley's payment. *See Hans Const. Co., Inc. v. Phoenix Assur. Co. of N.Y.*, 995 F.2d 53, 55 (5th Cir. 1993) (finding that an insurer's reliance on an independent expert provides, "at the very least, an arguable basis for denying a claim"); *Firehouse Church Ministries v. Church Mut. Ins. Co.*, No. 3:20-CV-354, 2022 WL 895925, at *5 (S.D. Miss. Mar. 25, 2022) (finding that an insurer "had an arguable reason for denial of payment based on its engineer's conclusion").

Cooley is therefore not entitled to punitive damages or other extra-contractual damages for bad faith, and the Court grants State Farm's motion as to those claims.

State Farm also seeks to have Cooley's claims for "emotional distress and mental anguish" dismissed. *See* [1-1] ¶ 36; [39] at 11–12. Cooley did not respond to State Farm's argument on that issue, however. "A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022). Accordingly, the Court grants State Farm's motion as to those claims.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the reasons stated,

- Defendant's [36] Motion to Strike Expert Testimony is DENIED;
- Defendant's [38] Motion for Summary Judgment is DENIED; and
-  Defendant's [38] Alternative Motion for Partial Summary Judgment is GRANTED.

Cooley's claims for bad faith, punitive damages, emotional damages, and other extra-contractual damages are DISMISSED with prejudice. Only his breach of contract claim remains.

SO ORDERED AND ADJUDGED this the 13th day of March, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE
